## GILLESPIE v NEW YORK CENTRAL R R CO

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided December 14, 1931

Stearns, Chamberlain & Royon, Cleveland, for plaintiff in error.

Paul Lamb, Cleveland, for defendant in error.

LEVINE, PJ.

It is settled law that, on a motion to direct made by defendant at the conclusion of the plaintiff's evidence, the evidence offered by the plaintiff must not only be taken as true, but also that every favorable intendment and inference must be given to such evidence.

An examination of the petition discloses that the plaintiff relied upon eight specifications of negligence which the plaintiff denominates "wanton negligence" as follows:

1. That the engine was operated with a short crew.

2. That decedent was not furnished a safe ingress and egress to his living quarters.

3. That it was necesssary for decedent to go over dangerous switches and tracks to obtain water.

4. That defendant was negligent in failing to furnish a lookout on the engine.

5. That defendant was negligent in failing to warn decedent.

6. That defendant was negligent in permitting the engine to coast down hill noiselessly under the circumstances.

7. That defendant was negligent in permitting wood, braces and piles of. debris near its railroad.

We shall disregard specification number one, which is: "That the engine was operated with a short crew, for the reason that, in our opinion, §12557-1 GC, which is the statute relied upon, was intended as a protection to members of the crew engaged in operating movements, and cannot be invoked in favor of one not included in the class of persons for whose protection the law was enacted.

Specification three, to the effect "that it was necessary for decedent to go over dangerous switches and tracks to obtain water," is merely a statement of fact and is not, in our opinion, a specification of negligence.

Specification seven, "that the defendant was negligent in permitting wood, braces and piles of debris near its railroad," cannot be relied upon as a basis for recovery, because the railroad company has a right to make lawful use of its property in any way that its discretion may dictate. At most, specification seven can be regarded only as descriptive of the conditions surrounding the vicinity where the accident occurred.

The pertinent specifications are the fol-

lowing: Specification two, "that the decedent was not furnished a safe ingress and egress to his living quarters"; specification four, "that defendant was negligent in failing to furnish a lookout on the engine"; and specification five, "that defendant was negligent in failing to warn decedent."

An examination of the plaintiff's evidence discloses that plaintiff's decedent, one Edward Mathis, had been working for the railroad company for a few days as a water boy and section hand; that he, together with other boys, was furnished living quarters in old freight cars located on the railroad company's premises and in the vicinity of where the accident occurred; that they prepared food there and slept there; that on the afternoon of the accident, the decedent and the other members of his crew, ceased work at about 4:30 p. m., put their tools away in the tool box at the foot of the hill, and walked up the siding to the old bunk cars; that Mathis obtained a water bucket from the car and started to walk down the siding down hill to get some water at a hydrant located at the railroad company's water station some two hundred and fifty yards from the siding and located very close to the west rail of the siding; that the hydrant was furnished by the railroad company, and employees living in the bunk cars were instructed by the railroad company to get water there.

The record further shows that the siding down which Mathis started, ran down hill into a kind of a pit. To the left or east of the siding and upon a terrace above the siding were the four tracks of the belt line, two main tracks and two storage tracks. Between the four tracks of the belt line and the siding the railroad company was at that time constructing a large concrete wall. Wood forms were in place or were being constructed to hold the concrete, and long braces to hold these forms in place extended out close to the left or east rail of the siding. Besides the braces, excavations and debris were at the left of the siding as you go down hill. To the right of the siding was another steep terrace lower than the siding by about 15 feet upon which was another siding or switch and many switches further down the hill ran off to the right of the siding and into plants in that neighborhood. Also on the right of the siding were piles of ties and rails and supplies for repairing the railroad. There was also a fence close to the siding. That is, on both sides of the siding between the bunk cars and the hydrant were obstructions, wood braces, materials and excavations.

As Edward Mathis was walking down this siding with the water bucket, Alfred Turner was waiting for him in front of the bunk cars at the top of the hill and saw him walking on the end of the ties to the right of the right rail. He was about to leave the yards down the hill from the bunk cars, when a yard engine which was not in sight at the time Mathis came down the hill came from the far side or east side of the belt line tracks and crossed over the four belt line tracks and entered at the top of the hill the siding on which Mathis was walking. The engine stopped at the top of the hill in front of the bunk cars for a derail. Part of the crew had left the engine before it appeared at the bunk cars. The fireman left the engine at the top of the hill or at the bunk cars, leaving the engineer alone upon the engine. The engine started down the hill with only the engineer on the engine and one brakeman standing on the right side of the tender. The engineer started his engine and let it coast down the hill quietly. As it approached the bottom of the hill at the point where Mathis was killed, he opened up the engine. No one saw the accident at the moment it occurred. Alfred · Turner saw Mathis and the engine just before the accident.

The record justified the conclusion that hundreds of people going to and from the city to the large plants crossed this very switch on which this accident occurred; that many employees working for the railroad company went up and down this switch daily; that the route chosen by Mathis was the only route by which employees living in the bunk cars can get out on the streets and return.

There is evidence in the record that there was no bell ringing at the time or near the time when the engine ran over Mathis, who was trapped in a place where there were obstructions on both sides of the track. The engineer did not know that he killed any one. He turned his engine over to the night crew at the foot of the hill and went home. A few minutes later the night crew found Mathis' body lying between the rails of the main switch, a few yards up the hill to the rear of the engine. A cap was found on the front of the engine and Mathis' water bucket to the right of the track.

This recital is contained in the evidence furnished by the plaintiff and came from the mouths of the various witnesses.

There is considerable discussion in the briefs of counsel as to whether Mathis was, at the time of the accident, an employe of the railroad company, it being

contended by the railroad company that since he had ceased working at about 4:30 p. m., he was not at the time of the accident engaged in the work of his employer. We hold that this element is not of importance in the consideration of the question before us.

We are called upon to determine whether or not, under the circumstances, which for the purpose of the motion must be regarded as true, the railroad company owed a duty to plaintiff's decedent, and also to determine the extent of that duty.

We may well assume, for the purpose of argument, that Mathis was not at the time of the accident, engaged in the work of his employer. The fact, however, remains that the railroad company, his employer, furnished living quarters for him and others, where they prepared their food and where they had their lodging. The railroad company, having undertaken to so provide living quarters for the plaintiff's decedent, owed a duty to exercise reasonable care and to take reasonable precaution in providing a safe ingress and egress to and from such living quarters. This duty, which in our opinion the railroad company owed to the decedent and others occupying the bunk cars, is incident to the company's undertaking to furnish such living quarters to the decedent and others.

As the record now stands, it is made to appear that there was no other way of getting to the water hydrant than the path over the switch which was taken by the decedent. Keeping in mind that a great many people, employees and others, crossed the switch daily, the railroad company cannot be permitted entirely to disregard this fact. With knowledge of actual conditions which under the record must be charged to the railroad company, it becomes its duty, when operating yard engines down the hill, to at least give warning to those who may happen to be there in time for them to escape from the oncoming engine.

In so far as the decedent is concerned, even though he be not regarded as engaged in the employer's work at the time of the accident, a duty devolved upon the railroad company to take reasonable precaution by way of providing safe ingress and egress to and from the living quarters which it provided. When the railroad company provided living quarters for plaintiff's decedent and others in the bunk cars, it must be taken to have reasonably expected that the occupants will not remain in the cars all the time; that they may have reasonable occasion to leave the cars to do their shopping in stores found in the vicinity, to fill their water buckets, and to do all neces-

sary things which people usually do. Having undertaken to provide living quarters for plaintiff's decedent and others in the bunk cars, the railroad company cannot be allowed to act in total disregard of their safety.

Aside from the relationship of employer and employe which for the sake of argument we shall hold did not exist in this case at the time of the accident, another relation existed between the railroad company and plaintiff's decedent, by virtue of the company undertaking to furnish living quarters for the decedent and others in the company's bunk cars. There was no other path which decedent could have reasonably taken because of the debris and obstructions. Decedent, in order to get his water bucket filled from the hydrant provided by the company, had to take the path which he took, and it likewise necessitated upon his part the crossing of the particular switch, in view of the conditions there prevailing, and the company knew, or in the exercise of ordinary care should have known, that any movement of an engine without warning, was dangerous to life and limb.

We hold that it was, therefore, for the jury to say whether the railroad company, through its engineer, exercised due care in moving the engine without an effective warning, and whether the failure to give it was the proximate cause of the death of the decedent.

Because of the foregoing, the judgment of the Common Pleas Court is ordered reversed and the cause remanded for a new trial.

WEYGANDT and VICKERY, JJ, concur.